**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAMADY KABA** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-2148** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **CRAIG LOWE, WARDEN,** | : | |
| **PIKE COUNTY** | : | |
| **CORRECTIONAL FACILITY** | : | |
| | : | |
| **Respondent.** | : | |

## MEMORANDUM OPINION

### I. BACKGROUND

On July 30, 2026, Petitioner Mamady Kaba ("Petitioner") a citizen of Guinea, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1)[1], as well as a Motion for Immediate Release (Doc. 2). Petitioner is detained within the Middle District of Pennsylvania and names as Respondent Craig Lowe, Warden of Pike County Correctional Facility.

Petitioner asserts that his arrest and detention violate the Fourth Amendment and due process. (Doc. 1 at 6–8). He further asserts that his conditions of confinement violate the Eighth Amendment and due process. *Id.*

[1] Unless otherwise indicated, all references to the docket refer to the instant matter, *Kaba v. Lowe et al*, Case No. 3:26-cv-2148 (M.D. Pa).

Petitioner has been detained since February 24, 2026, when he appeared for a scheduled appointment at the ICE Philadelphia Field Office. (Doc. 7 at 3). Petitioner was originally detained at Moshannon Valley Processing Center. (Doc. 7-3 at 4). On March 13, 2026, Petitioner filed his first petition for writ of habeas corpus in the Western District of Pennsylvania. *See Kaba v. Oddo et al.,* Case No. 3:26-cv-445-CCW (W.D. Pa.) (hereafter "Kaba I") (Doc. 1). On March 31, 2026, the Honorable Christy Criswell Wiegand granted his petition in part, finding that Petitioner was subject to discretionary detention under 8 U.S.C. § 1226(a) and entitled to a bond hearing. *Kaba I* (Doc. 9). Petitioner received a bond hearing, consistent with Judge Wiegand's Order, and on April 2, 2026, an Immigration Judge ("IJ") denied Petitioner's request for bond, finding that Petitioner was a flight risk. (Doc. 7-4). On April 22, 2026, an IJ subsequently ordered Petitioner removed to Guinea on April 22, 2026. (Doc. 7-5). Petitioner's appeal to the Board of Immigration Appeals ("BIA") remains pending and, accordingly, his order of removal is not final. (Doc. 7-6).

Petitioner later filed a Motion to Enforce Order Granting Petition for Habeas Corpus before Judge Wiegand, arguing that the April 2, 2026 bond hearing violated his due process rights. *See Kaba I* (Docs. 10, 13). On April 30, 2026, the *Kaba I* Court denied the Motion to Enforce, finding that the bond hearing was constitutionally sufficient. *Kaba I* (Doc. 13). In or around June 2026, Petitioner was transferred from Moshannon Valley Processing Center to Pike County Correctional Facility. (Doc. 9 at 2).

In the present petition, Petitioner seeks his immediate release, another bond hearing, or parole. (Doc. 1 at 8). Respondent opposes the petition, claiming that this Court lacks jurisdiction over Petitioner's arrest-based challenges, and further arguing that "although this Court may be able to construe the Petition as a challenge to the legal procedure of [the April 2, 2026] bond hearing, a district court has already reviewed the sufficiency of that hearing and found it to be constitutional." (Doc. 7). Petitioner's detention is governed by 8 U.S.C. § 1226(a).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a

discharge from custody.[2] *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

Given that Petitioner has filed his habeas petition *pro se*, the Court will carefully consider Petitioner's arguments and "liberally construe[]" the petition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining the Court's "[special] obligation to liberally construe a *pro se* litigant's pleadings is well-established"). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

## III. ANALYSIS

Petitioner seeks his immediate release, parole, or another bond hearing. Although Respondent claims the Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2), he is incorrect. A court of equal jurisdiction has already determined that Petitioner was subject to discretionary detention under 8 U.S.C. § 1226(a). *See Kaba I* (Docs. 10 and 13).

Section 1226(a) provides:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

[2] Although Petitioner cites *German Santos* for the proposition that the Government should bear the burden of proof in justifying Petitioner's denial of bond, that case applies to detentions under 8 U.S.C. § 1226(c), not § 1226(a). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020) ("We now hold that once detention *under § 1226(c)* has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary." (emphasis added)). Petitioner is detained pursuant to 8 U.S.C. § 1226(a), not § 1226(c).

> Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). It is undisputed that Petitioner received a bond hearing before an IJ four months ago and was denied bond after the IJ determined he was a flight risk.[3] (Doc. 7-4). Moreover, a Court of equal jurisdiction has already reviewed the sufficiency of the procedures used by the IJ at the bond hearing and found that "the IJ made an individualized determination" and the "bond hearing had each of the essential elements of a fundamentally fair bond hearing and complied with Petitioner's due process rights." *Kaba I* (Doc. 13) (citing *Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022)).

---

[3] To the extent Petitioner argues he is not a flight risk, the Court lacks jurisdiction to review the discretionary determinations of the IJ. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Chim v. Tsoukaris*, 2026 WL 1650938, at *3 (D.N.J. June 8, 2026) ("Here, Petitioner's challenge to the IJ's denial of bond based on him being a flight risk is a challenge to the IJ's credibility determinations and weighing of the evidence, which are discretionary determinations beyond the review of this Court.") (citing 8 U.S.C. § 1226(e)). If Petitioner can demonstrate a material change in circumstances, he may seek a custody redetermination before an IJ, not this Court. *See* 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.").

### A. Petitioner has not shown his bond hearing was procedurally deficient.

The Third Circuit has noted, "in the context of a § 2241 petition brought by an immigration detainee, that § 2241 petitions are not subject to the gatekeeping mechanism of § 2244(b); *i.e.*, a petitioner need not seek permission from a court of appeals before filing a second or successive § 2241 petition." *Queen v. Miner*, 530 F.3d 253, 254–55 (3d Cir. 2008) (citing *Zayas v. INS*, 311 F.3d 247, 255 (3d Cir. 2002)); *see also Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 441 (3d Cir. 2021) (noting same). Although federal courts retain jurisdiction to consider second or successive habeas petitions brought under § 2241,[4] "the pre-AEDPA doctrines concerning abusive or successive petitions still apply." *Esogbue v. Holmes*, 142 F. App'x 98, 100 (3d Cir. 2005) (citing *Zayas*, 311 F.3d at 257). For example, the abuse of the writ doctrine generally bars second or successive habeas petitions, prohibiting "a petitioner under § 2241 from 'rais[ing] new claims that could have been resolved in a previous action,'" or attempting to re-litigate claims previously rejected in a prior habeas petition. *Anariba*, 17 F.4th at 442. But the abuse of the writ doctrine requires pleading with specificity by the Respondent,[5] and although Respondents have

---

[4] *See, e.g., Holland v. Warden Canaan USP*, 998 F.3d 70, 74 (3d Cir. 2021) (finding courts retain jurisdiction to consider successive § 2241 habeas petitions and "discretion to hear them").

[5] Well-established caselaw provides a specific procedure for a finding of abuse of the writ: "When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may

noted Petitioner's prior petition, Respondents have not expressly sought dismissal on grounds of abuse of the writ.

But the Court need not reach the abuse of the writ doctrine given that the evidentiary record is devoid of any facts showing a procedural deficiency in Petitioner's bond hearing. Petitioner has submitted only conclusory allegations that the IJ's have been administering, in general, "Rubber Stamp denials," without submitting the transcripts from his hearing. (Doc. 9 at 8). This is insufficient to carry Petitioner's burden of proving grounds for relief. *Goins v. Brierley*, 464 F.2d at 949 (noting Petitioner carries burden of proof); *see also Gonzalez Melendez v. Warden, Pike Cnty. Corr. Facility*, 2026 WL 2199339, at *2 (M.D. Pa. July 30, 2026) ("[T]here are no allegations [on the face of the successive habeas petition] amounting to a change in circumstances from just a few days ago.").

Moreover, although the abuse of writ doctrine has not been pled, issue preclusion, or collateral estoppel, provides an alternate ground for dismissal of Petitioner's due process claims. *See Brown v. Nash*, 247 F. App'x 406, 408 (3d Cir. 2007) (non-precedential) (applying issue preclusion between two habeas petitions). Under the doctrine of collateral estoppel, Petitioner is precluded from re-litigating the sufficiency of his prior bond hearing when the identical issue has been determined by a court of competent jurisdiction. *Id.* Collateral estoppel applies when: "(1) the issue sought to be precluded is the same as that

---

nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Zayas*, 311 F.3d at 254 (citing *McCleskey v. Zant*, 499 U.S. 467, 494–95 (1991)).

involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Keslosky v. Borough of Old Forge*, 66 F. Supp. 3d 592, 606 (M.D. Pa. 2014). Here, all four requirements are satisfied by our sister court's review of Petitioner's first challenge to the bond hearing's constitutional sufficiency. First, in previously bringing a Motion to Enforce Order Granting Petition for Habeas Corpus, Petitioner previously argued that "the April 2, 2026 bond hearing violated his Fifth Amendment due process rights because the IJ failed to meaningfully assess whether Petitioner is a flight risk and failed to address the fact that Petitioner has complied with all ICE reporting requirements." *Kaba I* (Doc. 13). In the habeas petition at issue here, Petitioner has advanced identical arguments. *See* Doc. 9 at 2–3 (Petitioner's traverse) (arguing that "the April 2, 2026 bond hearing was insufficient," because Petitioner "never missed a single court or check-in date as required."). Second, the sufficiency of Petitioner's first bond hearing was actually litigated—Petitioner was represented by counsel and both Petitioner and Respondent submitted briefing on the matter. *See Kaba I* (Docs. 10, 12). Third, the sufficiency of the bond hearing was determined by a valid and final judgement. Judge Wiegand reviewed the transcript of the April 2, 2026 hearing and determined that: "First, the IJ's factfinding was based on a record produced before the IJ and disclosed to Petitioner....Second, the IJ gave Petitioner's counsel the opportunity to present arguments regarding flight risk....Finally the IJ made an individualized determination of Petitioner's interests, ultimately determining that Petitioner

posed a flight risk." *Kaba I* (Doc. 13) (evaluating the three due process factors articulated in *Ghanem*, 2022 WL 574624, at *2). Judge Wiegand thereafter issued an Order denying Petitioner's Motion, which Petitioner declined or failed to appeal, giving it final effect. *Id.* Finally, Judge Wiegand's determination of the bond hearing's sufficiency was essential to her Order Denying Petitioner's Motion to Enforce—indeed, the due process challenge was the sole issue adjudicated. *Id.*

Accordingly, Petitioner is not entitled to any habeas relief because he is lawfully detained under 8 U.S.C. § 1226(a) and he has failed to demonstrate that his detention violates due process. *See Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019) ("Because we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we are limited to reviewing only those of [Petitioner's] challenges that pertain to the adequacy of process he received at his bond hearing").

**B. <u>The duration of Petitioner's detention does not provide grounds for relief.</u>**

To the extent that Petitioner challenges the six-month duration of his civil immigration detention, that claim fails. Duration alone cannot "sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018). "Unlike § 1226(c) detainees . . . who were detained for prolonged periods without being given any opportunity to apply for release on bond," here, as

previously established, Petitioner "was granted meaningful process prior to filing his habeas petition." *Id.* at 279–80.

**C. <u>Petitioner's individual conditions of confinement are not an "extreme case" requiring release.</u>**

Petitioner next claims that his conditions of confinement at Pike County Correctional Facility violate the Eight Amendment and due process. (Doc. 1 at 3–4). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) and *Bell*, 441 U.S. 520, 538 (1979)). The Court finds that Petitioner's conclusory allegations of inadequate medical care and punitive facility conditions to *other* detainees provide an insufficient basis for habeas relief. (Doc. 6 at 11–12). Petitioner does not claim he is not receiving medical treatment at Pike County Correctional Facility. Rather, he lists general medical conditions other detainees are suffering as a basis for habeas relief and claims that Respondent's boilerplate actions and inactions constitute deliberate indifference to his needs. (Doc. 1 at 3–4). Without more detailed factual allegations supporting his conditions of confinement claim, the Court cannot conclude that his case constitutes an "extreme case" that warrants habeas relief based on his alleged conditions of confinement at Pike County Correctional Facility. *Hope*, 972 F.3d at 324.

### D. Petitioner's warrantless arrest does not provide grounds for his release

Finally, Petitioner alleges that his warrantless arrest in violation of the Fourth Amendment constitutes grounds for his immediate release. As a threshold matter, it is not clear that the Court has jurisdiction to entertain this claim.[6] Even if the Court does have jurisdiction to address this claim, though, the remedy for a warrantless arrest is not release from detention—the remedy is "the suppression of evidence obtained therefrom." *Valenzuela v. Semaia*, 2025 WL 3635578, at *4 (C.D. Cal. Nov. 3, 2025) (citing *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)); *see also Noori v. Soto,* 2026 WL 631642, at *2 (D.N.J. Mar. 5, 2026) (rejecting warrantless arrest as basis for immigration detainee's release); *Silva v. Noem*, 2026 WL 560338, at *3 (E.D. Va. Feb. 25, 2026) ("As the Supreme Court has recognized, 'if sufficient ground for [a petitioner's] detention by the government is shown, he is not [to] be discharged for defects in the original arrest or commitment.'" (citing *Ekiu v. United States*, 142 U.S. 651, 662 (1892) and *United States v. Crews*, 445 U.S. 463, 474 (1980))).

[6] In *Khalil v. President, United States*, the Third Circuit held that 8 U.S.C. § 1252(b)(9) limits the Court's habeas jurisdiction to "claims that courts cannot 'meaningfully' review through the PFR process"—that is, "those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove [the detainee]." 164 F.4th 259, 274 (3d Cir. 2026). In other words, 8 U.S.C. § 1252(b)(9) may "strip[] the District Court of jurisdiction, requiring [Petitioner] to wait to raise his claims until he files a petition for review (PFR) of a final order of removal." *Id.* At 273; *but see Silva*, 2026 WL 560338, at *3 (finding Court had jurisdiction to consider warrantless arrest claim despite 8 U.S.C. § 1252(b)(9)). Courts have considered warrantless arrest claims on petition for review. *See generally Babula v. Immigr. & Naturalization Serv.*, 665 F.2d 293, 295 (3d Cir. 1981) (reviewing Fourth Amendment claims related to warrantless arrests on petition for review).

Upon careful consideration of the petition, the Court finds that Petitioner's claims lack merit, and he has failed to demonstrate that he is entitled to habeas relief at this time. Accordingly, the Court will deny the petition.[7]

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge

[7] If Petitioner attempts to file yet another habeas petition, he will be required to show, consistent with the abuse of writ doctrine, good cause and prejudice for why he failed to raise such grounds in his initial petition in *Kaba I*, or he must show that "a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey*, 499 U.S. at 495.